UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BRENDAN O'CARROLL,

    Plaintiff,

v.

COMMISSIONER GARY M. LANIGAN, et al.,

    Defendants.

Civ. No. 17-0808 (RBK) (KMW)

**OPINION**

**ROBERT B. KUGLER, U.S.D.J.**

## I.    INTRODUCTION

Plaintiff Brendan O'Carroll is a state prisoner who is proceeding *pro se* with a civil rights complaint. Currently pending before this Court is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6). For the following reasons, the motion to dismiss will be granted in part.

## II.    BACKGROUND

The Court recites the facts in the light most favorable to plaintiff. Mr. O'Carroll is a convicted and sentenced state prisoner presently confined in Southern State Correctional Facility ("SSCF"), New Jersey. He practices Odinism, also known as Asatru, a religion worshipping the Norse pantheon. Prior to November 2016, Odinist inmates in SSCF were permitted to wear metal Thor's Hammer medallions as the symbol of their faith.

Mr. O'Carroll sought to order a medallion from an approved vendor following the New Jersey Department of Corrections' ("NJDOC") specifications: "must be from source of sale, Maximum value of $25.00, no larger than 2" x 2", gold or silver in color, and a maximum chain length of 24 inches and the chains value can not exceed $5.00." A fellow practitioner informed

plaintiff that there was a notice from SSCF's mailroom stating metal Thor's Hammer medallions were no longer allowed in the facility. Any medallion had to be constructed out of wood. Plaintiff and two other practitioners approached a sergeant and asked why metal hammer medallions were no longer permitted. After making a phone call, the sergeant informed the inmates that the policy had changed on March 18, 2016. A memo from SSCF Administrator C. Ray Hughes dated December 12, 2016 confirming this policy was posted in the inmates' living areas on December 16, 2016.

Plaintiff alleges Christian and Muslim prisoners are permitted to wear metal medallions with their religious symbols and are provided other benefits within SSCF that Odinist inmates are not, *i.e.*, regular religious services and religious texts. He filed suit alleging violations of the First and Fourteenth Amendments to the Constitution, Article 1 of the New Jersey Constitution, the Religious Land Use and Institutionalized Persons Act of 2000, ("RLUIPA"), and New Jersey's "Fundamental Fairness Act". This Court granted Plaintiff's *in forma pauperis* application and permitted the complaint to proceed after screening pursuant to 28 U.S.C. § 1915.

Defendants have filed a motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Mr. O'Carroll did not file a response in opposition to the motion.

### III. LEGAL STANDARD

When considering a motion to dismiss a complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In reviewing the sufficiency of a complaint, the Court must "tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (alterations in original) (internal citations and quotation marks omitted).

## IV. DISCUSSION

i. First Amendment Claims

Mr. O'Carroll alleges defendants violated his First Amendment rights to practice his religion and to free speech. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). To make out a claim for denial of an individual's free exercise rights under the First Amendment, an individual must allege the regulation impinges on a sincerely held religious belief. *DeHart v. Horn*, 227 F.3d 47, 51-52 (3d Cir. 2000) (en banc).

The Court considers four factors in assessing the overall reasonableness of a prison regulation: (1) "there must be a 'valid, rational connection' between the prison regulation and the

3

legitimate governmental interest put forward to justify it" ; (2) "whether there are alternative means of exercising the right that remain open to prison inmates" ; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally";  and (4) whether there are alternatives to the regulation that "fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests." *Turner*, 482 U.S. at 89-91.

There are sufficient facts in the complaint for a plausible inference that the regulation is not reasonably related to a legitimate institutional interest. Defendants summarily assert that a metal hammer medallion is more dangerous than a wooden medallion. Safety is a legitimate penological goal; however, there are enough facts in the complaint to suggest the policy against metal hammer medallions is arbitrary since metal crosses and other religious jewelry are permitted.

Furthermore, accepting the facts in the complaint as true for purposes of the motion to dismiss, "none of the catalogs that sell Thor's Hammer sell it at specifications that are allowed by the Mail Room standards at [SSCF]. The wooden versions of the Hammer are simply too big to [wear] as a medallion . . . ." Between the ban on metal medallions and the inability to purchase wooden medallions that comply with NJDOC regulations, Odinist inmates are effectively prohibited from possessing Thor's Hammer medallions. According to the NJDOC manual submitted with the complaint, a hammer medallion is the sole representation of Thor's Hammer that is permitted inside a prison and is the only representation of the hammer that may be used for the Blot ritual.[1]  The complaint also claims there are no regularly scheduled Odinist services

---

[1] The NJDOC guidelines for the practice of Odinism/Asatru define Blot as "a ritual that is celebrated when a symbolic sacrifice is made in honor of a god or goddess within the faith of Odinism/Asatru."

or religious texts available to inmates. It is therefore not clear that there are other means by which Mr. O'Carroll can express his faith.

Under the third factor, Mr. O'Carroll's assertion that Christian and Muslim inmates are permitted to wear metal medallions "casts substantial doubt on [SSCF's] assertion that accommodating [plaintiff's] request would result in significant problems for the prison community." *DeHart*, 227 F.3d at 58 (noting prison officials needed to provide more evidence of impact of accommodation when prison denied an accommodation to Buddhist inmate that it provided for another religion). Finally, it is a reasonable inference based on the facts alleged in the complaint that permitting metal medallions would not be a heavy burden on SSCF since inmates were permitted to wear them up until 2016. Plaintiff plausibly sets forth a claim the defendants violated his First Amendment rights.

Defendants' motion to dismiss these claims is denied.[2]

ii. Liberty Interest

Plaintiff further alleges the ban on metal hammer medallions violates his liberty interests under New Jersey's constitution. "[D]etermining whether a fundamental right exists involves a two-step inquiry. First, the asserted fundamental liberty interest must be clearly identified. Second, that liberty interest must be objectively and deeply rooted in the traditions, history, and conscience of the people of this State." *Lewis v. Harris*, 908 A.2d 196, 207 (N.J. 2006). The complaint plausibly alleges that the right to practice one's religion is "deeply rooted" in the history of the state. The motion to dismiss this claim is likewise denied.

---

[2] Defendants argue Mr. O'Carroll failed to state in his complaint that he exhausted his administrative remedies. Such a statement is not a pleading requirement. *See Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002) ("[N]o provision of the [Prison Litigation Reform Act] requires pleading exhaustion with particularity.").

iii. Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 et seq.

Mr. O'Carroll also states the ban on metal medallions violates RLUIPA. "RLUIPA protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief[.]'" *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015) (quoting 42 U.S.C. § 2000cc–5(7)(A)). RLUIPA provides "'greater protection' for religious liberty than is provided by the First Amendment. . . . [C]ourts must be careful not to import reasoning from cases such as *Turner* involving First Amendment rights." *Payne v. Doe*, 636 F. App'x 120, 124 (3d Cir. 2016) (per curiam) (citing *Hobbs*, 135 S. Ct. at 863) (internal citation omitted). "Where the prisoner meets his burden of showing that the prison's policy substantially burdened his exercise of religion, the burden shifts to the prison to show its policy '(1) [was] in furtherance of a compelling governmental interest; and (2) [was] the least restrictive means of furthering that compelling governmental interest.'" *Id.* (quoting *Schlemm v. Wall*, 784 F.3d 362, 364-65 (7th Cir. 2015)) (alterations in original).

"RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . ., not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Hobbs*, 135 S. Ct. at 862. Plaintiff alleges metal medallions are banned from the prison and he is unable to purchase a wooden medallion that complies with NJDOC regulations from SSCF's approved vendors. Under the facts alleged in the complaint, prison regulations essentially prohibit plaintiff from having any Thor's Hammer medallion, which is part of a ritual that is a dictate of his religious faith. Therefore, he has sufficiently pled a RLUIPA claim. *See id.* Defendants' motion to dismiss this claim is denied.

iv.     Equal Protection Claim

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Thus, to state a claim under the Equal Protection Clause, a plaintiff must allege that: (1) he is a member of a protected class; and (b) he was treated differently from similarly situated inmates. *See id.*

Plaintiff alleges he and other Odinist inmates are treated differently than other inmates because of their religion. Specifically, inmates practicing other faiths are permitted to possess metal religious jewelry. This is sufficient to state an Equal Protection claim of a facially discriminatory policy based on religion. *See Hassan v. City of New York*, 804 F.3d 277 (3d Cir. 2015), *as amended* (Feb. 2, 2016). The motion to dismiss this ground is denied.

v.      Conspiracy to violate constitutional rights

Mr. O'Carroll further alleges defendants conspired to violate his constitutional rights. "To make out a § 1983 conspiracy claim, the plaintiff must make specific factual allegations of a combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events in order to deprive plaintiff of a federally protected right." *Fioriglio v. City of Atl. City*, 996 F. Supp. 379, 385 (D.N.J. 1998), *aff'd*, 185 F.3d 861 (3d Cir. 1999)

Plaintiff does not allege any facts suggesting defendants entered into an agreement with each other for the specific purpose of violating his rights. The Court will dismiss this claim.

vi. New Jersey "Fundamental Fairness" Act

Finally, defendants assert the claims based on New Jersey's Fundamental Fairness Act should be dismissed because the statute does not exist. Although the Court was unable to locate a statute known as the Fundamental Fairness Act, its research revealed a fundamental fairness doctrine created by the New Jersey Supreme Court.

"[T]he fairness and rightness doctrine does not rest on any provision of the federal Constitution. Nor does it spring from the guarantee of due process that the state supreme court has found implicit in Article I, paragraph 1 of the New Jersey Constitution." Bruce D. Greenberg, *New Jersey's "Fairness and Rightness" Doctrine*, 15 RUTGERS L.J. 927, 938 (1984). New Jersey courts have applied this doctrine to address "governmental action that is constitutional but that, nonetheless, includes elements of oppression or harassment requiring court intervention." *State v. P.Z*, 703 A.2d 901, 917 (N.J. 1997). "In those rare cases where government action does not comport with 'commonly accepted standards of decency of conduct to which government must adhere,' and where existing constitutional protections do not provide adequate safeguards, [the New Jersey Supreme Court] has not hesitated to declare that government must be restrained." *Id.* (quoting *State v. Talbot*, 364 A.2d 9 (N.J. 1976)).

The New Jersey Supreme Court has applied the fairness and rightness doctrine in a variety of situations, but "there is one common denominator in all of those cases: a determination that someone was being subjected to potentially unfair treatment and there was no explicit statutory or constitutional protection to be invoked." *Doe v. Poritz*, 662 A.2d 367, 422 (N.J. 1995). Mr. O'Carroll's allegations that he is not able to practice his religion and that Odinist inmates are being treated differently than inmates practicing other religions are appropriately and

8

sufficiently addressed under the First and Fourteenth Amendments of the federal Constitution and similar provisions of the New Jersey Constitution. He therefore does not state a "fairness and rightness" claim.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the claims will be granted as to the conspiracy and fairness and rightness claims. Defendants shall file an answer to the remainder of the complaint within 14 days of entry of this Opinion and Order. An appropriate order will be entered.

DATED: October 5, 2017

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge
